Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY ANIELLO, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>    vs.<br><br>PROTEOSTASIS THERAPEUTICS, INC., MEENU CHHABRA, DAVID ARKOWITZ, FRANKLIN BERGER, BADRUL A. CHOWDHURY, KIM COBLEIGH DRAPKIN, EMMANUEL DULAC, JEFFREY W. KELLY, and YUMANITY THERAPEUTICS, INC.,<br><br>               Defendants. | Case No.:<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br>(3)  Breach of Fiduciary Duties<br>(4)  Aiding and Abetting Breach of Fiduciary Duties<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Anthony Aniello ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Proteostasis, Inc. ("Proteostasis" or the "Company"), against Proteostasis, the Company's Board of Directors (the "Board" or the "Individual Defendants,"), Yumanity Therapeutics,

Inc. ("Parent"), Yumanity Holdings, Inc. ("Yumanity Holdings"), Pangolin Merger Sub, Inc. ("Merger Sub," and collectively with Parent and Yumanity Holdings, "Yumanity," and Yumanity, together with Proteostasis and the Individual Defendants, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to Parent as a result of an unfair process for an unfair price, and to enjoin an upcoming proposed stock-for-stock reverse merger which, when completed, will substantially dilute existing shareholders of Proteostasis, who will own approximately only 32.5% of the combined company (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 24, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Yumanity will become an indirect wholly-owned subsidiary of Proteostasis, forming one publicly traded entity combined with the investors in Yumanity, significantly diluting Proteostasis investors' share of the combined company.

3.      However, despite this description, it is in fact impossible to glean from the any publicly released documentation related to the Proposed Transaction, an estimate of the value, in U.S. Dollars, of the consideration that Plaintiff or other public stockholders of Proteostasis are set to receive.

4.      Thereafter, on September 23, 2020, Proteostasis filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

5.      Plaintiff alleges that the Individual Defendants (defined herein) have breached their fiduciary duties by agreeing to the Proposed Transaction based on a flawed process which will result in grossly inadequate compensation for shareholders.  As such, Plaintiff and the other public shareholders of Proteostasis common stock are entitled to enjoin the Proposed Transaction or, alternatively, to recover damages in the event that the transaction is consummated.

6.      Pursuant to the terms of the Proposed Transaction, on a pro forma basis upon the closing of the Merger and the closing of anticipated financing, the current Proteostasis stockholders, will only own approximately 32.5% of the combined company, with Yumanity's current stockholders and new investors will own approximately 67.5% of the combined company (on a fully diluted basis), subject to the adjustments set forth in the Proposed Transaction.

7.      In addition, the Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Registration Statement describes an insufficient sales process in which the only end goal was a sale to Yumanity.

8.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

9.      In further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on September 23, 2020 with SEC in an effort to solicit stockholders to vote their Proteostasis shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Proteostasis stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Proteostasis and Yumanity, utilized in any financial analyses purporting to support the Proposed Transaction, if any; and (c) the data and inputs underlying the financial analyses

CLASS ACTION COMPLAINT

purporting to support the Proposed Transaction performed by Proteostasis's financial advisor MTS Health Partners, L.P. and/or its affiliate MTS Securities, LLC (collectively, "MTS").

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

11.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a Proteostasis stockholder.

12.     Defendant Proteostasis, a clinical stage biopharmaceutical company, engages in the discovery and development of novel therapeutics to treat cystic fibrosis. Proteostasis is organized under the laws of Delaware and has its principal place of business at 80 Guest Street, Suite 500, Boston, Massachusetts. Shares of Proteostasis common stock are traded on the New York Stock Exchange under the symbol "PTI."

13.     Defendant Meenu Chhabra ("Chhabra") has been a Director of the Company at all relevant times.  In addition, Chhabra serves as the Company's Chief Executive Officer ("CEO") and President.

14.     Defendant David Arkowitz ("Arkowitz") has served as director of Company at all relevant times.

15.     Defendant Franklin Berger ("Berger") has been a director of the Company at all relevant times. In addition, Berger serves as the Chairman of the Board.

16.     Defendant Badrul A. Chowdhury ("Chowdhury") has served as director of Company at all relevant times.

17.     Defendant Kim Cobleigh Drapkin ("Drapkin")  has served as director of Company at all relevant times.

CLASS ACTION COMPLAINT

18.     Defendant Emmanuel Dulac ("Dulac") has been a director of the Company at all relevant times.

19.     Defendant Jeffrey W. Kelly ("Kelly") has been a director of the Company at all relevant times.

20.     The defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

21.     Yumanity Therapeutics, Inc. is a clinical-stage biopharmaceutical company that is accelerating the revolution in the treatment of neurodegenerative diseases through its transformative scientific foundation and drug discovery platform.

22.     Defendant Merger Sub is a subsidiary of the Company created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

- 5 -

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Proteostasis' common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

27.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. According to the Company's most recent 10-Q, as of August 3, 2020, there were 52,175,861 common shares of Proteostasis outstanding;

b.     There are questions of law and fact which are common to the Class, including *inter alia*, the following:

   i.     Whether Defendants have violated the federal securities laws;

   ii.    Whether Defendants made material misrepresentations and/or omitted material facts in the Proxy;

   iii.   Whether Defendants have breached their fiduciary duties; and

   iv.    Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

- 6 -

CLASS ACTION COMPLAINT

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.      Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

<u>**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**</u>

28.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Proteostasis and owe the Company the duties of due care, loyalty, and good faith.

29.     By virtue of their positions as directors and/or officers of Proteostasis, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Proteostasis to engage in the practices complained of herein.

30.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.      act with the requisite diligence and due care that is reasonable under the circumstances;

b.      act in the best interest of the company;

c.      use reasonable means to obtain material information relating to a given action or decision;

- 7 -

CLASS ACTION COMPLAINT

d.      refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.      avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.      disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

31.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Proteostasis, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

32.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Proteostasis, Plaintiff and the other public stockholders of Proteostasis, including their duties of loyalty, good faith, and due care.

33.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Proteostasis common stock in the Proposed Transaction.

CLASS ACTION COMPLAINT

## SUBSTANTIVE ALLEGATIONS

*Company Background*

34.     Proteostasis engages in the discovery and development of novel therapeutics to treat Cystic Fibrosis ("CF"). The Company's lead product candidates for the treatment of CF include PTI-801, a cystic fibrosis transmembrane conductance regulator (CFTR) corrector agent; PTI-808, a CFTR potentiator; and PTI-428, a CFTR amplifier. The Company has collaboration agreements with the Cystic Fibrosis Foundation, Inc. to research, develop, and commercialize products for the treatment of CF, non-classical CF, and other pulmonary diseases in the United States or the European Union; and Genentech, Inc. for licensing the technology and materials relating to therapeutic small molecule modulators.

35.     On June 1, 2020, the Company announced it was evaluating its PTI-129 cystic fibrosis drug as a treatment for COVID-19.

36.     Speaking on the possibility and need of these studies, Defendant Chhabra, President and CEO of Proteostasis, stated, "The ongoing COVID-19 pandemic is a public health crisis that demands the investigation of all possible avenues of resolution," said Defendant Chhabra, 'We are exploring ways to further our understanding of PTI-129's potential in fighting COVID-19, and are seeking support from governmental agencies to accelerate this program." Vice President Chatterjee added, "The urgent need to develop effective treatments against COVID-19 is a global priority, and Calibr is committed to studying a broad spectrum of compounds and pathways, such as the UPR modulator, PTI-129, in the fight against this disease."

37.     Defendant Yumanity recently signed a partnership with Merck, one of the largest pharmaceutical companies in the world. As detailed in a June 25, 2020 Pharmaceutical-Technology.com article, "Yumanity is working on the development of disease-modifying therapies for ALS, Parkinson's disease and Alzheimer's disease. The company's research and development approach focuses on reversing the cellular phenotypes and disease pathologies developed due to protein

misfolding. Merck Research Laboratories Neuroscience Discovery vice-president Fiona Marshall said: 'There remains tremendous unmet medical need for the treatment of patients with amyotrophic lateral sclerosis and frontotemporal lobar dementia. We look forward to working with scientists at Yumanity to advance research and evaluate the potential for therapeutic intervention in these neurodegenerative diseases.' Under the terms of the agreement, Merck will make an upfront payment to Yumanity, which may also receive milestones totaling approximately $500m upon the successful development of marketed products for pipeline programmes, along with sales royalties."

38.     The strong future prospects for Yumanity are warranted; the Investors Presentation for the Proposed Transaction stated, "Yumanity's scientifically-differentiated discovery platform and targeted drug development approach provides the opportunity to revolutionize the treatment of neurodegenerative diseases."

39.     Yumanity's strategic plans and market share opportunities indicate a future of financial success. This will come at the expense of the minority Proteostasis shareholders who will be significantly diluted, retaining only approximately 32.5% of the pro forma ownership of the combined company while Yumanity investors retain a 67.5% stake in the combined company.

40.     Despite this solid performance and potential, the Individual Defendants have caused Proteostasis to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

41.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Yumanity.

42.     First while the Registration Statement indicates a so-called "Transaction Committee" was created to run the sales process, it does not indicate what powers this committee had in relation to

CLASS ACTION COMPLAINT

the sales process, or if its approval was necessary for the Company's entry into any particular strategic alternative.

43.     Moreover, it is clear from the Registration Statement that the Transaction Committee was plainly not independent or disinterested as Defendant Chhabra, the Company's President and CEO, sat on the Committee.

44.     In addition, the Registration Statement is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including Yumanity, whether these agreements differ from each other, and if so in what way.

45.     Moreover, the Registration Statement fails to indicate the specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Yumanity, would fall away.

46.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

47.     On August 24, 2020, the Company issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> **BOSTON, Mass. – August 24, 2020** – Yumanity Therapeutics and Proteostasis Therapeutics, Inc. (Nasdaq: PTI) today announced that the companies have entered into a definitive merger agreement. The combined company, operating under the name Yumanity Therapeutics, Inc., will leverage a common scientific expertise in the area of protein misfolding to advance Yumanity's pipeline of innovative, disease-modifying programs for neurodegenerative diseases.

> Yumanity's first clinical-stage product candidate, YTX-7739, is currently in Phase 1 clinical development for the treatment and disease modification of Parkinson's disease. Yumanity is also advancing several additional candidates for other neurodegenerative disorders, including dementia with Lewy bodies, multi-system atrophy, amyotrophic lateral sclerosis (ALS or Lou Gehrig's disease), and frontotemporal lobar dementia (FTLD).

> "The combination of PTI and Yumanity brings together two technologies rooted in a shared scientific legacy of protein misfolding as the basis of disease, as well as

CLASS ACTION COMPLAINT

capabilities and resources that offer shareholders a broad platform for value creation," commented Meenu Chhabra, President and Chief Executive Officer of PTI. "We believe the combined company is well-positioned to advance multiple programs into and through the clinic, including Yumanity's lead candidate YTX-7739, currently in Phase 1 trials for the treatment of Parkinson's disease. We are excited to be working with Yumanity's management team and leading investors to complete the merger."

Yumanity has raised more than $100 million from leading investors that include Alexandria Venture Investments, Biogen, Fidelity, Merck, Pfizer, Redmile Group, and Sanofi Ventures. The Company also recently entered into a strategic research collaboration with Merck (known as MSD outside the United States and Canada) for the discovery and development of novel agents for the treatment of ALS and FTLD with Yumanity eligible to receive future payments totaling approximately $500 million in addition to royalties on the net sales of any marketed products. Upon the anticipated closing of the merger between PTI and Yumanity, Richard Peters, M.D., Ph.D., President, Chief Executive Officer and Director of Yumanity, will become President, Chief Executive Officer and Director of the combined company.

"Yumanity's state-of-the-art R&D efforts and deep insights into new potential targets to treat neurodegenerative diseases places us on a rapid trajectory toward our goal of revolutionizing the treatment of these disorders. Our merger with PTI should enable the combined company to grow faster, deliver potential therapies to patients more quickly and create sustainable shareholder value well beyond what either of us would achieve separately," said Dr. Peters. "We have made significant clinical and business progress over the past several months, including our recent strategic research collaboration with Merck and our Series C financing. This merger also ensures that we have access to the additional capital we will need to advance our pipeline of disease-modifying therapies." "Today's announcement brings together two organizations that share a common scientific heritage in the science of protein misfolding and brings that science one step closer to novel solutions for patients suffering from the debilitation of neurodegenerative diseases," said Tony Coles, M.D., Chairman and Co-founder of Yumanity Therapeutics. "We look forward to continuing this important clinical work on behalf of patients as we make this transition to becoming a public company."

**Proteostasis' Cystic Fibrosis (CF) Program Update**

PTI also announced today that it is pursuing a strategic transaction related to its proprietary CFTR modulators. PTI plans to share proceeds from any monetization of its CF assets through contingent value rights (CVR). PTI stockholders of record as of the close of the merger would receive a portion of any upfront payment and CVRs entitling the holders to all net proceeds from any future milestones derived from the grant, sale or transfer of rights by PTI through a transaction completed from now until the closing of the merger. PTI stockholders of record would also be entitled to a portion of any net proceeds from a transaction completed within nine months of the closing of merger. In addition to the merger agreement, a form of the CVR agreement outlining the mechanism for distributing of any such proceeds to legacy PTI holders will be filed with the U.S. Securities and Exchange Commission on Form 8-K.

CLASS ACTION COMPLAINT

PTI's CFTR modulators are currently being studied as part of the CHOICES development program. 502 subjects have completed enrollment in the organoid portion of the study, with data expected in the fourth quarter of 2020.

"We believe that our CF drug candidates have the highest probability of reaching patients in the hands of a pharmaceutical company with global development and commercialization capabilities that shares our vision of empowering the global CF patient community with more treatment options is realized," said Ms. Chhabra. "It has been an honor to serve the CF community in the fight to bring new treatment options to patients and their families."

**About the Proposed Merger**

Under the terms of the merger agreement, PTI will acquire all outstanding shares of Yumanity in exchange for newly-issued shares of PTI common stock. Upon completion of the proposed acquisition, it is anticipated that existing PTI shareholders will own approximately 32.5% of the combined company and Yumanity shareholders will own approximately 67.5% of the combined company. The actual allocation will be subject to adjustment based on each company's outstanding equity ownership and Proteostasis' net cash balance at the time of closing of the merger. Following completion of the merger, the Yumanity Board of Directors will be expanded to nine persons to include the appointment of two current Proteostasis directors. The existing Yumanity Directors will continue to serve in their current positions and Dr. Coles will remain as chairperson.

The transaction has been approved by the boards of directors of both companies. The merger is expected to close in the fourth quarter of 2020, subject to customary closing conditions, including approval of the merger by the shareholders of PTI. The combined company is expected to trade on the NASDAQ Global Market under the ticker symbol YMTX.

*The Inadequate Merger Consideration*

48.     As set forth above, the Proposed Transaction significantly undervalues the stockholders of the Company by diluting their future interest in the surviving company.

49.     First, it is impossible to glean from the Registration Statement, Merger Agreement, Merger Announcement, or any other documentation related to the Proposed Transaction, the actual value of the consideration that Plaintiff or other public stockholders of Proteostasis will receive. Notably, it appears that, given the structure of the Merger Agreement, Plaintiff and other stockholders of the Company are simply seeing their interest in Proteostasis diluted significantly as the Company issues a large swatch of Proteostasis common shares to all stockholders of Yumanity, a private entity with no valuation data available or provided, at a paltry exchange rate that dilutes Proteostais shareholders' equity interest to 32.5% of the combined company.

50.     Moreover, the compensation to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company and the bright future of the combined company.

51.     For example, within the past three months, financial analysts have set targets for the Company's stock to reach as high as $8.00 per share and an average of $7.50 per share in the next 12 months. Such a value is substantially more than the stock price at the time of the announcement of the Proposed Transaction, indicating strong confidence in the near-term prospects of the Company.

52.     The Company's in vitro COVID-19 efforts with its current Cystic Fibrosis treatments, as mentioned above, has the ability to generate exponential growth for the Company if successful, "In the company's *in vitro* studies carried at Scripps Research's drug discovery division, Calibr, the molecule demonstrated that there was a possibility of a reduction in the production of the host's viral protein cells. PTI-129 attained this through activation of the UPR adaptive branches as well as minimizing misfolded protein levels."

53.     In addition to the Company's bullish outlook, Yumanity's outlook is overwhelmingly positive. An August 24, 2020 Fierce Biotech article on the Proposed Transaction explained the outlook, "Yumanity's lead program, YTX-7739, is in phase 1 for the treatment of Parkinson's disease. The company is pursuing several other neurodegenerative disease programs, including treatments for dementia, multiple system atrophy and amyotrophic lateral sclerosis (ALS). Two of those programs are the subject of Yumanity's partnership with Merck. The Big Pharma is willing to bet as much as $500 million for the exclusive rights to treatments for ALS and frontotemporal lobar dementia, or FTLD, a group of uncommon brain disorders that affect the frontal and temporal lobes of the brain."

54.     Yumanity has an opportunity to offer treatment for millions of people without options, as detailed by a January 17, 2020 Genetic Engineering & Biotechnology News article, "Neurodegenerative diseases represent the greatest therapeutic challenge of our time. Worldwide, an estimated 60 million people suffer from neurodegenerative diseases, which impair the function of the brain and central nervous system, and the number is expected to double every 20 years as the average

age of the world population increases. These diseases, which include Alzheimer's disease, Parkinson's disease, and amyotrophic lateral sclerosis (ALS), are devastating not only to patients, but also to caregivers, causing adverse personal and economic consequences that ripple throughout society. For most neurodegenerative diseases, there are no approved cures, and palliative disease management has not improved in the last 30 years."

55.     The article emphasizes Yumanity's opportunity, "Yumanity's unique approach underscores the need for creative solutions when it comes to diseases of the nervous system. Instead of matching chemistry to a known pathway, Yumanity pursues phenotype rescue in an unbiased screen. When [Yumanity]'s founder, Susan L. Lindquist, PhD, then a professor at MIT, discovered that yeast can be used to model neurocellular pathologies, the next logical step was to identify chemical compounds that could reverse yeast responses to toxic neurodegenerative proteins. 'Yeast are a clever model to explore brain toxicity,' declares Peters. 'Abnormal clumping or misfolding of proteins is evolutionary conserved. Be it yeast or human neurons, the responses to the toxicity are very similar. We have also discovered a correlation between the capacity of a compound to penetrate yeast membrane and its ability to traverse the blood-brain barrier.'"

56.     In the Press Release for the Proposed Transaction, President and CEO of Yumanity Richard Peters said, "'Yumanity's state-of-the-art R&D efforts and deep insights into new potential targets to treat neurodegenerative diseases places us on a rapid trajectory toward our goal of revolutionizing the treatment of these disorders. Our merger with PTI should enable the combined company to grow faster, deliver potential therapies to patients more quickly and create sustainable shareholder value well beyond what either of us would achieve separately.'"

57.     Clearly, while the deal will be beneficial to Yumanity it comes at great expense to Plaintiff and other public stockholders of the Company, whose investment in the promising and successful company will be highly diluted.

CLASS ACTION COMPLAINT

58.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Yumanity at the expense of Proteostasis public stockholders, which clearly indicates that Proteostasis stockholders were not an overriding concern in the formation of the Proposed Transaction.

**Preclusive Deal Mechanisms**

59.     The Merger Agreement contains certain provisions that unduly benefit the Yumanity by making an alternative transaction either prohibitively expensive or otherwise impossible.  Notably, in the event of termination, the merger agreement requires Proteostasis to pay up to $2,100,000 to the Yumanity and/or its affiliates, if the Merger Agreement is terminated under certain circumstances. Moreover, under one circumstance, Proteostasis must pay this termination fee even if it consummates any competing Superior Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee, or Break-Up Fee (as defined in the Merger Agreement), will make the Company that much more expensive to acquire for potential purchasers. The Break-Up Fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

60.     The Merger Agreement also contains a "No Solicitation" provision that restricts Proteostasis from considering alternative acquisition proposals by, *inter alia*, constraining Proteostasis' ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Offer*" as defined in the Merger Agreement.

61.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the Yumanity and/or its affiliates information in order to match any other offer, thus providing the Yumanity access to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Yumanity.

62.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

63.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

64.     The breakdown of the benefits of the deal indicate that Proteostasis insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Proteostasis.

65.     For example, Defendant Chhabra and Company insider Marija Zecevic, the Company's CFO, are entitled to lucrative Retention awards as part of the lead up into the consummation of the Proposed Transaction, as follows:

| Name | Title | Retention Amount |
|---|---|---|
| Meenu Chhabra | Proteostasis President, Chief Executive Officer and Interim Principal Financial Officer | $283,290 |
| Marija Zecevic, Ph.D. | Proteostasis Chief Commercial Officer | $152,880 |

66.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

67.     Thus, while the Proposed Transaction is not in the best interests of Proteostasis stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

68.     On September 23, 2020, the Proteostasis Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

69.     Specifically, the Registration fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.   In particular, the Registration Statement fails to disclose:

      a.  The Registration Statement fails to indicate a dollar value, precise or approximate, of the merger consideration being offered to Proteostasis stockholders as part of the Proposed Transaction;

CLASS ACTION COMPLAINT

b. The Registration Statement fails to disclose the following information with regards to the "Transaction Committee";

   i. The specific powers of the Transaction Committee had in relation to the sales process;

   ii. Whether the Transaction Committee's approval was necessary for the Company's entry into any particular strategic alternative, including the Proposed Transaction;

   iii. The specific reasoning for the addition of Defendant Chhabra to the Transaction Committee, thus rendering it non independent and non-disinterested.

c. The Registration Statement is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including Yumanity, whether these agreements differ from each other, and if so in what way;

d. The Registration Statement fails to indicate the specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Yumanity, would fall away; and

e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning

CLASS ACTION COMPLAINT

motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Proteostasis's and Yumanity's Financial Projections*

70.    The Registration Statement fails to provide material information concerning financial projections provided and/or adjusted by Proteostasis and Yumanity management and relied upon by MTS in its analyses.  The Registration Statement discloses management-prepared financial projections for which are insufficient and/or are materially misleading.

71.    The Registration Statement indicates that in connection with the rendering of MTS's fairness opinion, MTS reviewed, "certain internal financial analyses and forecasts relating to Proteostasis' business prepared by and provided to MTS by the management of Proteostasis (the "Proteostasis Projections"), as well as "certain internal financial analyses and forecasts relating to Yumanity's business prepared by and provided to MTS by the management of Proteostasis (the "Adjusted Yumanity Projections" and, together with the Proteostasis Projections, the "Projections").

72.    Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Proteostasis and Yumanity management provided to the Board and MTS. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

73.    Notably, the Registration Statement fails to provide any financial projection information for Proteostasis whatsoever, completely negating the ability of Plaintiff and other public stockholders of the Company to make their own estimates of the Company's future stand-alone value, and therefore,

CLASS ACTION COMPLAINT

negating their ability to make an informed decision regarding whether to vote in favor of the Proposed Transaction.

74.     With respect to the "Unadjusted Yumanity Projections", the Registration Statement fails to provide material information concerning the financial projections.  Specifically, the Registration Statement fails to disclose material line items for the following metrics:

      a.   Gross Profit, including the line item of cost of goods sold; and

      b.   Operating Income, including the line items of research and development expenses, sales and marketing expense, and general and administrative expense.

75.     With respect to the "Adjusted Yumanity Projections", the Registration Statement fails to provide material information concerning the financial projections.  Specifically, the Registration Statement fails to disclose material line items for the following metrics:

      a.   Gross Profit, including the line item of cost of goods sold;

      b.   Operating Income, including the line items of research and development expenses, sales and marketing expense, and general and administrative expense;

      c.   The specific inputs and assumptions utilized to determine the tax rate of 26%.

76.     These disclosures are critical for stockholders to be able to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

77.     The Registration Statement also provides non-GAAP financial metrics, including, but not limited to, Unlevered Free Cash Flow, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics

78.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully

informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

79.     Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Proteostasis are unable to properly evaluate the Company's true worth, the accuracy of MTS's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by MTS*

80.     In the Registration Statement, MTS describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

81.     With respect to the *Liquidation Analysis* for Proteostasis, the Registration Statement fails to adequately explain why Company management directed MTS to conduct this analysis utilizing the assumption that, "the only material asset of Proteostasis was its cash and that Proteostasis does not currently, and does not intend in the future to, conduct any activity that may result in the generation of revenue."

82.     With respect to the *Discounted Cash Flow Analysis* for Yumanity the Registration Statement fails to disclose the following:

    a.  the Registration Statement fails to adequately explain why Company management
        directed MTS to conduct this analysis utilizing the assumption that "the net present

CLASS ACTION COMPLAINT

value of the cash flows payable to Yumanity in connection with Yumanity's collaboration and licensing agreement with Merck is equal to $31,000,000.";

b.   The specific inputs and assumptions used to calculate Yumanity's weighted average cost of capital range of 12% to 16%;

83.   These disclosures are critical for stockholders to be able to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

84.   Without the omitted information identified above, Proteostasis public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.   Moreover, without the key financial information and related disclosures, Proteostasis public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

## FIRST COUNT

## Claim for Breach of Fiduciary Duties

## (Against the Individual Defendants)

85.   Plaintiff repeats all previous allegations as if set forth in full herein.

86.   The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs and the Company's public stockholders.

87.   By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Proteostasis.

88.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Proteostasis by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Proteostasis to its public stockholders.

89.     Indeed, Defendants have accepted an offer to sell Proteostasis at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

90.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction.

91.     The Individual Defendants dominate and control the business and corporate affairs of Proteostasis, and are in possession of private corporate information concerning Proteostasis' assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Proteostasis which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

92.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

93.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Proteostasis' assets and have been and will be prevented from obtaining a fair price for their common stock.

CLASS ACTION COMPLAINT

94.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

95.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendants Proteostasis and Yumanity)

96.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

97.     Defendants Proteostasis and Yumanity knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred

98.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

99.     Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

100.     Plaintiff repeats all previous allegations as if set forth in full herein.

101.     Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

102.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

- 25 -

CLASS ACTION COMPLAINT

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

103.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

104.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

CLASS ACTION COMPLAINT

105.     The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

106.     The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

107.     Plaintiff repeats all previous allegations as if set forth in full herein.

108.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

109.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able

CLASS ACTION COMPLAINT

to, and did, control the contents of the Preliminary Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

110.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Proteostasis' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

111.    The Individual Defendants acted as controlling persons of Proteostasis within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Proteostasis to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Proteostasis and all of its employees.  As alleged above, Proteostasis is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

CLASS ACTION COMPLAINT

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Proteostasis and obtain a transaction which is in the best interests of Proteostasis and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 14, 2020          BRODSKY & SMITH, LLC

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT